ROSEMARY CHEEK, Plaintiff-Appellant, *v.* WILLIAM DYE, Chief of Police of the Champaign Police Department, *et al.*, Defendants-Appellees.

Fourth District   No. 4—82—0082

Opinion filed August 16, 1982.

Greaves & Lerner, of Champaign, for appellant.

Craig J. Causeman, of Thomas, Mamer & Haughey, and Kathryn L. Samuelson, both of Champaign, for appellees William Dye and City of Champaign.

James W. Evans, of Evans & Froehlich, of Champaign, for appellee Board of Fire and Police Commissioners of City of Champaign.

JUSTICE WEBBER delivered the opinion of the court:

Plaintiff was a probationary police officer for the city of Champaign. Prior to the end of her probationary period she was summarily discharged by the chief of police. She sought a writ of *mandamus* from the circuit court of Champaign County and, after various amendments, the court dismissed with prejudice her second amended complaint. This appeal then followed. We affirm.

The fundamental issue presented, around which all the other issues revolve, is whether the undoubted power of a board of fire and police commissioners of a city subject to division 2.1 of article 10 of the Illinois Municipal Code (IMC) (Ill. Rev. Stat. 1979, ch. 24, par. 10—2.1—1 *et seq.*) to discharge a probationary officer may be delegated to the chief of police. So far as we are aware, this matter has not heretofore been passed upon by a reviewing court of this State.

Preliminarily, section 10—2.1—1 of the IMC (Ill. Rev. Stat. 1979, ch. 24, par. 10—2.1—1) provides that for all municipalities operating under division 2.1, a board of fire and police commissioners shall be appointed by the mayor with the consent of the appropriate municipal body; section 10—2.1—4 (Ill. Rev. Stat. 1979, ch. 24, par. 10—2.1—4) provides that the board shall appoint all members of the fire and police departments, and further sections set forth in detail how such appointments are to be made. Special provision is made for the appointment of the chiefs of the departments, if the city is under the managerial form, which Champaign has adopted.

Two sections of the IMC form the basis for the dispute in the case at bar. Section 10—2.1—15 (Ill. Rev. Stat. 1979, ch. 24, par. 10—2.1—15) provides for promotion by examination and merit and states in part:

"The method of examination and the rules governing examinations for promotion shall be the same as provided for applicants for original appointment, except that original appointments only shall be on probation, as provided by the rules."

Section 10—2.1—17 (Ill. Rev. Stat. 1979, ch. 24, par. 10—2.1—17) provides for removal and discharge of officers, and makes provision for written charges, a hearing on them by the board, and for disposi-

tion by the board of the matter.

Plaintiff contends that the latter section, 10—2.1—17, must govern discharge. Defendants, the chief of police of Champaign, the board of fire and police commissioners of Champaign, and the city itself, maintain that for a probationary officer section 10—2.1—15 controls.

Defendants' position is largely supported by the supreme court's opinion in *Romanik v. Board of Fire & Police Commissioners* (1975), 61 Ill. 2d 422, 338 N.E.2d 397. In that case the court held that section 10-2.1—17 did not apply to probationary officers and that section 10—2.1—15 authorized the board to adopt rules for the discharge of probationers.

The record here discloses that the defendant board has adopted such a rule and that the defendant city has likewise adopted an ordinance on the subject. The rule of the board provides:

"Upon initial appointment to either the Fire or Police Department, the Board will award a probationary certificate. This certificate is for one year and may be termed a 'probationary commission.' The Chief of either department, with the approval of the City Manager, has the authority to dismiss the employee at any time during this period. Upon promotion, the employee does not serve a probationary period. (10—2.1—15)."

The code of the City of Champaign, chapter 2, section 2—159, provides:

"The first twelve (12) months of service following appointment to the Police Department shall be a probationary period, during which time the appointee shall be subject to discharge without a trial before the Board of Fire and Police Commissioners. The Chief of Police, with the approval of the City Manager, may discharge such appointee during the probationary period if he proves incompetent as a policeman or is guilty of any act warranting the discharge of a policeman."

The crux of the problem is the delegation of the dismissal power to the chief of police. *Romanik* held:

"We hold that section 10—2.1—17 applies only to an officer who has completed his probationary period, and that section 10—2.1—15 authorized the Board to adopt its rule providing for summary discharge of probationary police officers." 62 Ill. 2d 422, 425, 338 N.E.2d 397, 399.

Neither the supreme court opinion, nor the appellate court opinion which preceded it, sets forth what the "rule providing for summary discharge" provided. It is apparent in *Romanik* that the plaintiff was

discharged by the board itself on written recommendation of the chief of police, while in the instant case the plaintiff was discharged by the chief by virtue of the delegation of that power to him under the rule. In his dissent in *Romanik*, Mr. Justice Goldenhersh cites a portion of the East St. Louis rule governing appointments, but we cannot know from this what "summary dismissal" meant. By inference from the *Romanik* opinion it appears that the chief submitted a recommendation to the board together with a list of the probationer's transgressions and that the board then dismissed him without a hearing, all of which was approved by the supreme court.

An analogous situation appeared in *Scheeler v. Fire & Police Com.* (1980), 85 Ill. App. 3d 684, 407 N.E.2d 219. There a probationer was summarily dismissed without a hearing, although the commissioners had not adopted any rule governing such a dismissal. The *Scheeler* court found nothing in *Romanik* which made the adoption of a rule a condition precedent to such action. Plaintiff's citation of *People ex rel. Charles v. Telford* (1977), 48 Ill. App. 3d 928, 363 N.E.2d 613, is inapposite. That case involved a city under division 1 of article 10 of the IMC (Ill. Rev. Stat. 1979, ch. 24, par. 10—1—1 *et seq.*) which pertains to civil service.

It is thus apparent under *Romanik* and *Scheeler* that a board of fire and police commissioners may impose a summary dismissal on a probationer, but as previously indicated, the question remains whether that power may be delegated to a chief of police.

We are unable to perceive any valid reason against such a delegation. In the absence of a hearing, there is little, if anything, for a board to do except enter a *pro forma* order of summary dismissal. Plaintiff admits in her second amended complaint that she was not entitled to a hearing, as she must under *Romanik*.

Section 10—2.1—15 creates a special class of officer, the probationer, and places no restrictions upon the board except that it proceed "as provided by the rules." Section 10—2.1—5 of the IMC (Ill. Rev. Stat. 1979, ch. 24, par. 10—2.1—5) provides:

> "The Board shall make rules (1) to carry out the purpose of this Division 2.1, and (2) for appointments and removals in accordance with the provisions of this Division 2.1."

No restrictions in rule making are placed on the board except in the case of non-home-rule municipalities. Removals are governed by section 10—2.1—17, which as we have already seen does not apply to probationers. The board's rule-making power in the area of summary discharge is virtually unfettered.

In *Romanik* the supreme court cited with apparent approval lan-

guage from *People ex rel. Betts v. Village of Maywood* (1938), 298 Ill. App. 160, 18 N.E.2d 459, to the effect that in the case of probationers the legislature contemplated that reasonable rules would be adopted concerning appointments. The converse is likewise true, that the rules governing summary dismissal be reasonable. We find both the board rule and the ordinance here in question to be so.

The statutory scheme of Division 2.1 for the appointment and compensation of board members and board officers indicates that those offices are something less than a full-time occupation. Good administration suggests that the one having the best first-hand knowledge of the probationer's performance, the chief, should have and retain the dismissal authority. Maintenance of discipline in jobs demanding grave responsibility and sometimes associated with severe stress likewise requires such authority.

Plaintiff has cited other cases in which discharges made by city managers were held invalid. (*E.g., Stearns v. Board of Fire & Police Commissioners* (1978), 59 Ill. App. 3d 569, 375 N.E.2d 877; *Bovinette v. City of Mascoutah* (1973), 55 Ill. 2d 129, 302 N.E.2d 313.) Since these cases were decided under section 10—2.1—17, they have no application to the case at bar.

Plaintiff also argues that since the Champaign ordinance was not enacted in accordance with its home rule power, modifying the IMC provisions (*Stryker v. Village of Oak Park* (1976), 62 Ill. 2d 523, 343 N.E.2d 919), the delegation of power was invalid. We do not agree. We have already held that the delegation was proper under section 10—2.1—15; the question of home rule then becomes irrelevant.

While admitting that a full hearing is not required in the case of a probationer, plaintiff nonetheless argues that the language in the ordinance, "if he proves incompetent as a policeman or is guilty of any act warranting the discharge of a policeman," indicates that some sort of an informal hearing was intended. The argument overlooks the language preceding, "without a trial." The phrase cited by plaintiff goes only to the matter of reasonableness, as discussed above, and sets a minimal standard for the chief of police and the city manager.

For all the foregoing reasons, we find the order of the circuit court of Champaign County dismissing the second amended complaint with prejudice to be correct, and it is affirmed.

Affirmed.

LONDRIGAN and TRAPP, JJ., concur.