**Paul LEWIS, Plaintiff,**

v.

**John W. HARRIS, individually and as Chief of Police of the Springfield Police Department, George Murphy, individually and as Assistant Chief of the Springfield Police Department, Karen Hasara, individually and as Mayor of the City of Springfield, and Gina Marshall, individually and as Chief Examiner of the Springfield Civil Service Commission, Defendants.**

No. 97–3048.

United States District Court, C.D. Illinois, Springfield Division.

June 5, 1997.

Verne H. Evans, Springfield, IL, for Plaintiff.

Janis E. VonQualen, Robert M. Rogers, Springfield, IL, for Defendants.

**OPINION**

RICHARD MILLS, District Judge:

With 2 ½ *hours* left in his 1–year probationary period as a Springfield police officer, Plaintiff was discharged.

He now alleges that Defendants violated the Due Process Clause of the Fourteenth Amendment.

But the Due Process Clause only applies if Defendants deprived Plaintiff of property, and employment as a probationary police officer is not property.

## I.  BACKGROUND [1]

Paul Lewis began working for the Springfield, Illinois Police Department (SPD) on May 22, 1995.  According to city regulations, Lewis' first year as a patrol officer was a period of probation.  The probationary period would have expired at midnight on May 21, 1996, had Lewis not been fired at 9:30 p.m.  that evening.

Apparently, two events led to Lewis being fired: an auto accident and a departmental investigation.

On February 21, 1996, Lewis was informed in writing that a complaint had been filed against him which was under investigation.  SPD policy requires such investigations to be completed within 30 days and that the subject of the investigation be informed of the outcome in writing.  Lewis never received any notice of the outcome of the investigation, and he alleges that it ended with a finding that the complaint was either not sustained or unfounded.

On May 13, 1996, Lewis was on patrol in a SPD squad car.  While responding to a call, Lewis collided with a car driven by a civilian.  As a result of the accident, both the civilian car and the squad car were severely damaged, although neither driver was injured.

Under SPD general orders, all accidents involving department vehicles are investigated by the Accident Review Board (the Board).  The sole purpose of the investiga-

---

1.  The following statement of facts derives from the Complaint.  Defendants do not assert facts substantially different from those Plaintiff pleads in his Complaint.

tion is to determine whether the accident was avoidable or unavoidable. The Board forwards its decision to the chief of police for final disposition. The Board ordinarily meets only once a month to review all accidents from the previous month. The Board had a meeting scheduled for May 22, 1996, to discuss accidents that happened in April 1996. The SPD's general orders provide that the officer involved in an accident will be notified of the hearing before the Board and that the officer must give 48 hours notice of his or her intent to attend the hearing.

At 3:00 p.m. on May 20, 1996, Lewis received a message on his telephone answering machine at his home. The caller informed Lewis that the Board planned to meet at 3:00 p.m. the next day. The only topic at the May 21, 1996 meeting of the Accident Review Board was Lewis' May 12, 1996 accident.

On May 21, 1996, at about 9:30 in the evening, the Springfield Police Chief, George Murphy, delivered a notice of termination to Lewis at his residence. The written form said only that Lewis was being fired for "Inadequate Job Performance," but Murphy confirmed that Lewis was being terminated as a result of the auto accident and the internal investigation. In order to terminate Lewis, Murphy had sought the prior approval of the mayor, Karen Hasara, and the City's chief civil service examiner, Gina Marshall. The entire Civil Service Commission approved the termination on June 10, 1996.

Lewis filed this lawsuit in Sangamon County, Illinois court on February 11, 1997. Defendants subsequently removed it to this Court. The Complaint is in three counts. Count I is a claim under 42 U.S.C. § 1983 against Defendants in their individual and official capacities. In Count I, Lewis alleges that Defendants violated his right to due process of law by depriving him of property (his job) without adequate procedural protection. Count II is a claim under 42 U.S.C. § 1985 against Defendants in their individual and official capacities. Count III is a state law claim for wrongful termination.

## II. LEGAL STANDARD

Defendants move to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2] Defendants support their motion with several exhibits, including several Springfield, Illinois Police Department personnel documents. Plaintiff has responded to the motion to dismiss and has submitted a copy of a letter as an exhibit to his response. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court converted the motion to one for summary judgment on the issue of whether Plaintiff had a property interest in his employment as a probationary police officer. The Court allowed the parties additional time to submit any additional materials bearing on Defendants' motion.

Under Fed.R.Civ.P. 56(c), summary judgment "should be granted if the pleadings and supporting documents show that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Ruiz–Rivera v. Moyer*, 70 F.3d 498, 500–01 (7th Cir.1995). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a

---

**2.** In ruling on a motion to dismiss, the Court "must accept well pleaded allegations of the complaint as true. In addition, the Court must view these allegations in the light most favorable to the plaintiff." *Gomez v. Illinois State Board of Education*, 811 F.2d 1030, 1039 (7th Cir.1987). Although a complaint is not required to contain a detailed outline of the claim's basis, it nevertheless "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984), *cert.* denied, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). Mere conclusions, without supporting factual allegations, are insufficient to support a claim for relief. *Cohen v. Illinois Institute of Technology*, 581 F.2d 658, 663 (7th Cir.1978), *cert. denied*, 439 U.S. 1135, 99 S.Ct. 1058, 59 L.Ed.2d 97 (1979). Dismissal is not granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

jury to return a verdict for that party" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Courts must consider evidence in the light most favorable to the nonmoving party *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

Upon review of the record, it appears that the defects in the Complaint are purely legal. None of the extraneous material the parties submitted, other than City Ordinances, SPD standing orders and rules, and Civil Service Commission Rules, is material to the Court's decision in this case. Based on the facts alleged in the Complaint, taken as favorably as possible to Plaintiff, the Court must dismiss this case.

## III. ANALYSIS

Defendants have filed a multifaceted motion to dismiss in which they challenge every aspect of Lewis' Complaint. The Court will focus only on the dispositive issue: did Lewis have a property interest in continued employment as a probationary patrol officer with the SPD? The Court concludes that he did not; therefore, both his 42 U.S.C. § 1983 and § 1985 claims fail.

### A. *Count I*

■ In any case where the plaintiff alleges that the defendants deprived him of procedural due process, the Court must ask two questions: (1) did the defendants deprive the plaintiff of a protected interest, and (2) if so, what process was due? *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 1153–54, 71 L.Ed.2d 265 (1982). The Fourteenth Amendment guarantees due process of law before a state deprives a person of life, liberty or property. Lewis alleges that Defendants deprived him of property: his employment as a probationary patrol officer.

First, did Lewis have a property interest in his employment as a probationary patrol officer? "To have a property interest [in public employment] a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The existence and dimension of a property interest is determined by looking to state law. *Id.*

Employment by a municipality in Illinois is governed by a body of statutes, local ordinances, and rules. Depending on the size of a city and the structure of its government, the city may be regulated by different parts of the Illinois Municipal Code. 65 ILCS 5/5–1–1 to 5/11–152–4 (West 1993 and Supp. 1997). Pursuant to 65 ILCS 5/10–1–1 the City of Springfield has established a civil service commission to oversee public employment. All new municipal employees must serve a period of probation. The probationary period is governed by 65 ILCS § 5/10–1–14 (West 1993), which provides, in part, that "[a]t or before the expiration of the period of probation, the head of the department or office in which a candidate is employed, may by and with the consent of the commission, discharge him or her upon assigning in writing his or her reason therefore to the commission."

By local ordinance and civil service commission rules, the City of Springfield has expanded the period of probation and provided additional controls on employment and discharge of city workers. Under these rules, employment is divided into three jurisdictions: Jurisdictions A, B, and C. Paul Lewis's employment fell within Jurisdiction A. Section 36.36 of the City of Springfield Code of Ordinances provides that all personnel actions regarding any job within Jurisdiction A shall be made in accord with the Civil Service Commission's rules. Among those rules is Rule 44, which provides:

> The Appointing Authority or designee wishing to discharge a probationary employee must seek the Commission's consent prior to the expiration of the period of probation.
>
> A. Dated notice of the request for the Commission's consent to discharge a probationary employee shall be delivered to the Commission by the Appointing Authority or designee, outlining the reasons therefore, and a copy of same

shall be served upon the probationary employee by any agent of the City, in person, or by certified mail.

Rule 44 virtually mirrors 65 ILCS 5/10–1–14, except that Rule 44 requires the written statement of reasons for discharge to be served upon the probationary employee the appointing authority seeks to discharge.

■ In many smaller cities and towns in Illinois, employment with the police or fire department is regulated by a board of fire and police commissioners established under 65 ILCS 5/10–2.1–1 to 5/10–2.1–30 (West 1993). This body of law provides an extensive procedure for discharging police officers and firefighters. 65 ILCS 5/10–2.1–17 (West 1993). That procedure, however, does not apply to probationary police officers. *Romanik v. Board of Fire & Police Commissioners*, 61 Ill.2d 422, 338 N.E.2d 397 (Ill. 1975).

■ A line of cases since *Romanik* has held that as a general rule, probationary police officers do not have property interests in their employment. *See Krecek v. Board of Police Commissioners*, 271 Ill.App.3d 418, 207 Ill.Dec. 227, 232, 646 N.E.2d 1314, 1319 (1995) ("Absent a clear statement to the contrary, probationary police officers have no right to continued employment under the Illinois Municipal Code."); *Faustrum v. Board of Fire & Police Commissioners*, 240 Ill.App.3d 947, 949–50, 181 Ill.Dec. 567, 568–69, 608 N.E.2d 640, 641–42 (1993) (holding that a probationary village police officer had no property interest in employment); *Sullivan v. Board of Fire & Police Commissioners*, 103 Ill.App.3d 167, 170, 58 Ill.Dec. 604, 606, 430 N.E.2d 636, 638 (1981) (noting that statute authorized the board to summarily fire probationary police officers). This is also the general rule federal courts apply in civil rights cases. *See Johnson v. Martin*, 943 F.2d 15, 16 (7th Cir.1991) (noting that as a probationary police officer, the plaintiff had no property interest in his employment); *Ratliff v. City of Milwaukee*, 795 F.2d 612, 624 (7th Cir.1986) (holding that a Wisconsin probationary police officer has no property right in his or her employment). Furthermore, Illinois courts are reluctant to limit the right of municipalities to summarily dis-

charge probationary employees. *Faustrum*, 240 Ill.App.3d at 951, 181 Ill.Dec. at 570, 608 N.E.2d at 643. Nevertheless, "[t]o establish a property interest in a probationary police officer's employment with a police department, the municipality must establish procedural requirements for termination of those officers." *Id.* (citing *Faustrum*, 240 Ill. App.3d at 949, 181 Ill.Dec. at 568–69, 608 N.E.2d at 641–42).

Relying primarily on *Lewis v. Hayes*, 152 Ill.App.3d 1020, 106 Ill.Dec. 102, 505 N.E.2d 408 (1987), Lewis argues that Springfield Civil Service Commission Rule 44 gave him a legitimate claim of entitlement to continued employment. In *Lewis v. Hayes*, the Illinois Appellate Court found that a probationary police officer had a property interest in his employment based on a regulation which provided "that a probationary employee can be terminated if he is found incompetent or disqualified for the performance of his duties[ ]" and which further said that termination could occur by the consent of the Board of Police and Fire Commissioners "after the chief submits written reasons for the termination." 152 Ill.App.3d at 1024, 106 Ill.Dec. at 105, 505 N.E.2d at 411.

The *Lewis* case must be read in context. *Lewis* dealt with employment of probationary police officers under a fire and police commission system. The Illinois Supreme Court has held that probationary officers are not entitled to the procedural protections the municipal code provides employees in such a system. *Romanik*, 61 Ill.2d at 425, 338 N.E.2d 397. *Lewis* simply held that by providing for some form of notice before discharge, a fire and police commission could opt to provide probationary police officers with the same procedural protection provided to tenured officers.

This case, however, concerns employment under a different system. Under the municipal code, the City of Springfield has established a civil service commission, which, by statute, must consent to all discharges of probationary officers. The procedure for obtaining consent of the commission does not convert employment as a probationary officer into for cause employment. Rather, the consent to the discharge is something that hap-

pens after the employing authority has decided to discharge the probationary employee. In *People ex rel. Charles v. Telford*, 48 Ill. App.3d 928, 931, 6 Ill.Dec. 799, 801, 363 N.E.2d 613, 615 (4th Dist.1977) (a challenge to the termination of a probationary Springfield police officer) the court stated:

> Although the decision to discharge a probationary employee may be discretionary, once that decision has been made, the element of discretion is removed in the procedure to be followed to effectuate the discharge. The two things that are required by law to make the discharge of a probationer effective are the assignment of a reason therefore to the Commission and the consent of the Commission to the discharge.

This statement makes clear that a probationary police officer may be discharged at the discretion of the employing authority. Only after the employer has decided to discharge the probationer do procedural protections come into play. Thus, the probationary officer cannot be said to have a property interest in his or her job. *See Doyle v. Board of Fire & Police Commissioners*, 48 Ill.App.3d 449, 6 Ill.Dec. 550, 552, 363 N.E.2d 79, 81 (1977)

(noting that courts must look to state law to determine whether a person has a property interest in employment and stating that "in Illinois, a probationary officer has no right to a pretermination hearing.").[3]

Because the Court finds that Paul Lewis did not have legitimate claim of entitlement to continued employment as a probationary patrol officer for the City of Springfield, the Court must dismiss his procedural due process claim. Obviously, because Lewis lacked a property interest, he was due no process at all when the City terminated his employment; therefore, the Court will not address the second prong of the procedural due process inquiry The Court also declines to comment on Defendants' remaining challenges to Count I; they are not dispositive, and any comment would be purely advisory.

### B. *Count II*

The Court must also dismiss Count II, which alleges a conspiracy to violate Lewis' constitutional rights. The only right mentioned in Count II is the right to procedural due process which, as the Court has already found, does not apply in this case. Furthermore, 42 U.S.C. § 1985 [4] applies only to con-

---

**3.** Simply by providing some post-termination review procedures, a state or local government does not establish property rights in employment. *Cain v. Larson*, 879 F.2d 1424, 1426 (7th Cir.1989) ("It is by now well-established that in order to demonstrate a property interest worthy of protection under the [F]ourteenth [A]mendment's [D]ue [P]rocess [C]lause, a party may not simply rely upon the procedural guarantees of state law or local ordinance.") (citing *Bishop v. Wood*, 426 U.S. 341, 345–47, 96 S.Ct. 2074, 2077–79, 48 L.Ed.2d 684 (1976)).

**4.** 42 U.S.C. § 1985 provides:

(1) Preventing officer from performing duties
If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

(2) Obstructing justice; intimidating party, witness, or juror
If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

(3) Depriving persons of rights or privileges
If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any per-

spiracies to violate the rights of members of a protected class. The Complaint contains no allegation that Paul Lewis belonged to a protected class.

In his Complaint, Lewis does not specify the subsection of § 1985 under which he seeks to proceed. In his response to the motion to dismiss, however, he cites only § 1985(3). To state a claim under § 1985(3), "the plaintiff must allege and prove four elements: (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Brotherhood of Carpenters & Joiners of America v. Scott*, 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983). The requirement that the plaintiff allege intent to deprive a person or persons of equal protection or equal privileges and immunities under the laws means that the plaintiff must allege, and ultimately prove, that some racial or other class-based discriminatory animus was behind the conspirators' actions. *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).

The problem with Count II is two-fold. First, the Complaint alleges that Defendants conspired to deprive Lewis of his rights under the Constitution "in that they deprived him of his property interest in his position with the SPD without an adequate statement of reasons for the discharge and an opportunity to be heard thereon." Complaint ¶ 32(a). The Court has already concluded

that Lewis did not have a property interest in continued employment as a probationary patrol officer; therefore, Count II must fail as it is premised on the incorrect notion that Defendants violated Lewis' rights at all. Second, Lewis does not allege that he was a member of a class subject to invidious discrimination. In his response to the motion to dismiss, Lewis suggests that he is a member of a class of probationary police officers, but he fails to explain how those officers are similar enough to each other to be members of a class protected by § 1985(3), and he fails to allege any discriminatory animus on the part of Defendants against the *class* of probationary patrol officers.

### C. *Count III*

Count III is a state-law claim for wrongful discharge. The Court need not address that claim on its merits because the Court may relinquish jurisdiction over Count III. Because the Court finds that Counts I and II fail to state valid claims for relief, the jurisdictional basis for the Complaint evaporates. The only reason this Court has jurisdiction over Count III is that 28 U.S.C. § 1367(a) provides such supplemental jurisdiction. Under 28 U.S.C. § 1367(c)(3), however, the Court may now dismiss Count III because it has dismissed the Complaint's only federal claims.

*Ergo,* Defendants' Motion to Dismiss is ALLOWED.

son or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of

the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.